RICHARD E. BIGGERSTAFF *v.* STATE OF INDIANA.

[No. 775S181. Filed April 13, 1977.]

*John G. Bunner,* of Evansville, for appellant.

*Theodore L. Sendak,* Attorney General, *Charles M. Russell,* Deputy Attorney General, for appellee.

HUNTER, J.—Following a trial by jury appellant-defendant, Richard E. Biggerstaff, was convicted on two counts of armed robbery. The trial court sentenced defendant to twenty-five years' imprisonment on each count and ordered the sentences to be served concurrently. This appeal follows the denial of the motion to correct errors.

Although several specific errors are alleged, they have been arranged into five general areas for purposes of discussion:

   I.   Prosecutorial Misconduct;

   II.   Admission of Prior Crimes;

   III.   Instruction;

   IV.   Propriety of Sentencing Procedures;

   V.   Suppression of Immunity Bargain with Accomplice.

The evidence viewed most favorably to the appellee establishes the following:

On August 23, 1974, two women returned to their residence in Evansville and came upon two men who were in the process of burglarizing the home. The men seized the two women, handcuffed and bound the two women with duct tape. Taken from the home were several valuables including a gold vase, money and several pieces of jewelry removed from the victims. Both men were armed and one of the two fired a shot into a chair to show that the gun was real.

## I. *Prosecutorial Misconduct*

Defendant argues that two remarks made by the prosecutor denied him a fair trial. The first occurred during the opening statement by the prosecutor. The specific statement made by the prosecutor was as follows:

"On August 23rd, 1974, the defendant in the vernacular of their trade cased the residence."

Defense counsel immediately objected and requested both an admonishment and the cause be removed from the jury. The motion for mistrial was overruled; however, the trial court did instruct the prosecuting attorney to limit opening argument to what the state intended to show by way of evidence. Defendant contends that the failure of the trial court to declare a mistrial was error.

The decision as to whether to grant a mistrial lies within the discretion of the trial court and will only be reversed upon an abuse of that discretion. *Pulliam* v. *State*, (1976) 264 Ind. 381, 345 N.E.2d 229; *Martin* v. *State*, (1974) 262 Ind. 232. In this instance the remark made by the prosecutor was indeed improper. However, in light of the isolated nature of the remark and the immediate admonition by the trial court, we do not believe that defendant was placed in such a position of grave peril that would require either declaration of a mistrial or reversal upon review. See, *Maldonado* v. *State*, (1976) 265 Ind. 492, 355 N.E.2d 843; *White* v. *State*, (1971) 257 Ind. 64, 272 N.E.2d 312.

The second remark to which defendant objects came during defense counsel's opening statement. Counsel stated to the jury that they had read the information and knew that Mr. Biggerstaff had pleaded not guilty. At that point the prosecutor objected to what he termed improper matter being discussed in the opening statement. He made the following comment:

"[T]hat is not an issue. I thought this was what the evidence would be."

Defense counsel again moved for removal of the cause from the jury.

The gist of the argument made by defense counsel was that the remark by the prosecutor constituted an improper comment in violation of defendant's Fifth Amendment right to remain silent. He contends that since the prosecutor knew from pre-trial discovery that the defense would present no evidence the comment was improperly prejudicial to the defendant.

After examining the record, we cannot agree with the defendant that the prosecutor's remark was an impermissible commentary on the defendant's silence. In no way can this exchange between counsel be regarded as prejudicial to the defendant. In the first instance, we feel the statement was entirely innocuous. Secondly, the jury was unaware that the defendant had chosen to remain silent; thereby nullifying any effect it might have had.

## II. *Admission of Prior Crimes*

James Svara, an accomplice, testified concerning the participation of himself, defendant, and two others in the armed robbery in Evansville. In addition Svara was permitted to testify, over defense counsel's numerous objections, about other criminal activity which the group had conducted.

The first of these crimes was the stealing of a white 1974 T-Bird. Next Svara described the planning of an armed

robbery by himself and the defendant in Michigan City. Svara was to gain entrance into the home under the guise of a salesman and then bind the victims so that he and the defendant could rob them. To accomplish this, Svara was given an attache case, duct tape similar to that used in the Evansville robbery, handcuffs, and a .22 automatic pistol with a silencer attached. Svara identified the pistol which ballistics proved to be the weapon fired into the chair during the robbery in this case. However, the Michigan City robbery was thwarted when no one was found at the home.

First, we note the general rule that evidence showing the commission of other crimes is inadmissible to prove the guilt of the accused. *Maldonado* v. *State*, (1976) 265 Ind. 492, 355 N.E.2d 843.

Earlier, this Court was called upon to determine the admissibility of the testimony concerning the white T-Bird in the trial of co-defendant, Abel Maldonado. Svara and Maldonado stole the car in Chicago. The car was subsequently used in the robbery at Evansville. In ruling on the admissibility of the testimony concerning the stolen car, we stated:

"It is always proper to show the instruments used in a crime were owned or possessed by the defendant. Corroborative evidence of how and where he obtained such instruments is certainly proper." *Maldonado* v. *State*, at 847.

We also ruled that the reference to the attempted Michigan City robbery was admissible. As an exception to the general rule, prior crimes that are nearly identical in method are admissible. This exception requires much more than mere repetition of similar crimes; "The device used must be so unusual and distinctive as to be like a signature." *Riddle* v. *State*, (1976) 264 Ind. 587, 348 N.E.2d 635; *McCormick on Evidence*, § 190 at 449 (2d ed. 1972).

In this instance several aspects of the two crimes were both identical and distinctive. Some of these similarities include the method of gaining entry, the way the victims were to be bound and weapons used in the commission of both

crimes. As we held in *Maldonado,* these features were sufficiently distinctive to be of probative value and, therefore, properly admitted.

Defendant also argues that the testimony of an FBI agent was inadmissible and should have resulted in declaration of a mistrial. The agent testified that he arrested the defendant for unlawful interstate flight to avoid prosecution for armed robbery. Defense counsel immediately objected and sought a mistrial. Following one more question and heated exchanges between counsel the trial court struck agent Kaspar's testimony and instructed the jury in the following manner:

"Ladies and Gentlemen of the Jury, the Court is striking from the record in its entirety the testimony of F.B.I. Agent Marcus Kaspar and I am instructing the Jury and admonishing the Jury at this time to disregard that testimony in its entirety. And I am further informing the Jury at this time that the Warrant upon which the defendant was arrested was issued pursuant to and for the matters here under consideration and that there were no other crimes involved. I am further admonishing the State of Indiana at this time that there will be no other evidentiary matter regarding the arrest of the defendant, Biggerstaff."

It is defendant's position that *White* v. *State, supra,* requires reversal in this instance. The facts in *White* were that a police officer was called to the stand for the purpose of identifying the accused. The officer stated that he had previously seen the defendant when he was brought into the police station in connection with an armed robbery. That robbery was not the crime with which the trial dealt. This Court listed several factors to be considered when determining the adequacy of striking improper testimony and admonishing the jury as opposed to the necessity of declaring a mistrial. After consideration of those factors, we determine whether the defendant has been placed in a position of grave peril to which he should not have been exposed. As was acknowledged in *White* the facts of each case by necessity are determinative of the outcome.

As stated earlier, the general rule is that the granting of a mistrial lies largely within the discretion of the trial judge and such matters will not be reversed on review absent an abuse of discretion. *Pulliam* v. *State, supra; Martin* v. *State, supra; Duke* v. *State,* (1968) 249 Ind. 466, 233 N.E.2d 159.

After close examination of the facts in this case, we do not believe the trial judge erred in denying the motion for mistrial. The issuance of the warrant and subsequent arrest by the FBI agent stemmed from the armed robbery in Evansville. It was obvious that the defendant had been arrested and the fact that the arrest was effectuated by the FBI would have little prejudicial impact. Coupled with the slight prejudice is the instruction by the trial court to the jury that they were to disregard the agent's testimony and the fact that the arrest arose from the crime with which defendant is charged. For these reasons we believe the trial court properly acted within its discretion.

### III. *Improper Instruction*

The defendant next contends that it was improper for the trial court to give an instruction to the jury concerning the guilt of an aider or abettor. The attack upon this instruction is actually twofold: first, defendant argues that the inadmissible testimony of Svara is the only evidence of aiding or abetting presented by the state; and second, this instruction created a vehicle by which this inadmissible testimony could be used by the jury in determining defendant's guilt. The state counters with the argument that the record is replete with evidence of defendant's role as both a principal and an aider or abettor.

When one is charged as a principal it is not error to instruct on the crime of aiding in the commission of the crime when there is evidence to support such an instruction. *Doss* v. *State,* (1971) 256 Ind. 174, 267 N.E.2d 385; *Bays* v. *State,* (1959) 240 Ind. 37, 159 N.E.2d 393. In this instance Svara's testimony indicated that the defendant had

an active role in the planning of the robbery. Therefore, we do not find error in the court's instruction.

## IV. *Sentencing Procedures*

Defendant next argues that error occurred when the trial court gave this instruction:

> "Any person who being over sixteen (16) years of age, commits or attempts to commit any felony while armed with any dangerous or deadly weapon, or while any other person is present and aiding or assisting in committing or attempting to commit such felony is armed with any dangerous or deadly weapon, shall be guilty of a separate felony and upon conviction shall be imprisoned for a determinate period of not less than ten (10) years nor more than thirty (30) years."

It is defendant's position that this instruction improperly permitted the jury to assess the sentence. In addition he objects to the jury being allowed to set his sentence without benefit of a pre-sentence report.[1]

The jury returned a verdict of guilty on both counts against the defendant. The trial court then ordered a pre-sentence investigation prior to sentencing the defendant.

The error of which defendant complains is unclear. He objects to the jury assessing the penalty but the record shows that the trial court sentenced him. The trial court also had before it a pre-sentence report. We find no error.

## V. *Suppression of Immunity Bargain*

The final error alleged by defendant concerns an agreement granting transactional immunity to Svara by the prosecutor in return for Svara's testimony. At trial, Svara was asked on cross-examination if any type of bargain had been struck in return for his testimony. Svara replied that none had been made. Part of the agreement between Svara's defense counsel

---

1. The proposition that a jury must be in possession of a pre-sentence investigation prior to sentencing was recently considered and rejected by this Court in *Pulliam* v. *State*, (1976) 264 Ind. 381, 345 N.E.2d 229.

and the prosecutor was that Svara was not to be informed of any bargain until after his testimony.

At a hearing to determine whether to permit defense counsel to file a belated and supplemental motion to correct errors, James Redwine, the prosecutor, testified that he had informed defense counsel of the agreement. In addition he pointed out that Svara's counsel had been present in the court room during Svara's entire testimony.

The position of the defendant is that the prosecutor had an absolute duty to correct Svara's testimony by informing the jury that immunity had been granted Svara in exchange for his testimony. The state argues that defense counsel knew of the agreement prior to trial thereby absolving the prosecutor of any duty to come forward at trial.

The duty upon a prosecutor to come forward when testimony is given known by him to be false is well-settled. *Alcorta* v. *Texas*, (1957) 355 U.S. 28, 78 S.Ct. 103, 2 L.Ed.2d 9. As was stated in *Napue* v. *Illinois*, (1959) 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217, the duty to come forward is not muted by the fact that the false testimony goes only to the credibility of a particular witness.

This Court addressed a similar problem in *Newman* v. *State*, (1975) 263 Ind. 569, 334 N.E.2d 684. In that case the attorney who prosecuted the case was not personally aware of any bargain and failed to inform the court, the jury and defense only through inadvertence. Nevertheless, we reversed because the jury had not been informed of the deal. *Accord, Giglio* v. *United States*, (1972) 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed. 2d 104.

The case at bar differs in one important way. Defense counsel knew that immunity had been granted Svara yet he took no action to correct the erroneous testimony. The defendant may not observe an error in the trial, make no objection or attempt to have corrective action taken and then rely upon such error for reversal. *Merry* v. *State*, (1975) Ind. App., 335 N.E.2d 249.

Secondly, the rationale for requiring disclosure to the jury is absent where the witness, as in this case, is unaware of the immunity agreement. As stated in *Napue:*

> "The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend."

Defense counsel brought out that Svara had not been charged as had his other accomplices. In that way his possible bias had been exposed to the jury.

This opinion is not to be read to permit the prosecution to surreptitiously enter into immunity agreements with witnesses' counsel to avoid bringing such information before the jury. However, it is our opinion that the prosecutor has met his burden under the facts of this case when he has fully informed defense counsel of all immunity or leniency agreements.

For all of the foregoing reasons, the judgment of the trial court should be affirmed.

Judgment affirmed.

Givan, C.J., Arterburn, DeBruler and Prentice, JJ., concur.

NOTE.—Reported at 361 N.E.2d 895.