Jeryl BASSIE, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 79S00–9804–CR–236.

Supreme Court of Indiana.

March 23, 2000.

Steven Knecht, Vonderheide & Knecht, P.C., Lafayette, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

RUCKER, Justice

After a trial by jury Jeryl Bassie was found guilty of one count of kidnapping as a Class A felony, and two counts of criminal confinement as Class B felonies. He was also adjudged a habitual offender. The trial court sentenced Bassie to forty years for kidnapping which was enhanced by thirty years for the habitual offender adjudication. The trial court also sentenced Bassie to fifteen years on one count of confinement with five years suspended, and ordered the sentences to be served consecutively. No sentence was imposed on the remaining count of confinement. Ultimately Bassie received a total executed term of eighty years imprisonment. In this direct appeal Bassie contends (1) the evidence was not sufficient to sustain his conviction for kidnapping, and (2) his forty-year sentence for kidnapping is excessive and should be reduced to the presumptive thirty years. We disagree with both contentions and therefore affirm.

The record shows that after consuming a quantity of alcohol and drugs, Bassie and an accomplice, Nashid Muhammad, decided to steal a car owned by Kim Garrett. Reaching the conclusion that it would be better first to obtain keys to the car, Bassie and Muhammad proceeded to the home that Garrett shared with his girlfriend, Jennifer Stout. Muhammad knocked on the door while Bassie stayed out of view. Alone with her two small children, Stout peered through a window advising Muhammad that Garrett was not present but agreeing to provide him with a telephone number where Garrett could be contacted. She then proceeded to telephone one of Garrett's relatives. With the receiver off the hook, Stout returned to the door to communicate further with Muhammad. At that point Bassie and Muhammad forced their way into her home and ordered Stout to lie on the floor. Bassie was armed with a twelve-gauge shotgun. The person to whom Stout was talking called the police. Using duct tape, the pair bound Stout's hands and taped her mouth. They also bound the hands and taped the mouth of one of Stout's small children. The men demanded the keys and title to Garrett's car. After Bassie searched for the items without success, both men proceeded to walk up the stairs inside the house with Stout leading the way. Bassie was pointing the shotgun at Stout's head. As they walked up the stairs, Bassie noticed police officers in the back yard. In fact police had surrounded the house. Using Stout as a shield, Bassie began to walk out the front door, but was ordered back inside. Attempting to find a means of escape, Bassie walked back and forth between the front and back doors of the home continuing to point the shotgun at Stout's head and using her as a shield.

In the meantime, while Bassie and Muhammad were distracted near the front of the house, a police officer approached the rear of the house and managed to grab one of the children. Eventually, a SWAT team hostage negotiator convinced Bassie to release the other child and to surrender his weapon. Bassie complied. Ultimately both men were arrested and Bassie was charged with one count of kidnapping and two counts of confinement. Bassie was also charged as a habitual offender. After a jury trial, he was found guilty as charged and also adjudged a habitual offender. This appeal followed.

I.

Challenging only his conviction for kidnapping, Bassie contends the evidence is insufficient to sustain the conviction. More specifically Bassie claims the State failed to rebut his claim of voluntary intoxication.[1] When a defendant raises the

1. In 1997, our legislature enacted Ind.Code § 35-41-2-5 and amended Ind.Code § 35-41-3-5, the intoxication statute. Ind.Code § 35-41-2-5 provides, "Intoxication is not a defense in a prosecution for an offense and may not be taken into consideration in determining the existence of a mental state that is an element of the offense unless the defendant meets the requirements of IC 35-41-3-5." The amendment to Ind.Code § 35-41-3-5

intoxication defense, the State bears the burden of negating the defense in relation to the *mens rea* of the offense. *Powers v. State*, 540 N.E.2d 1225, 1227 (Ind.1989). Whether a defendant was so intoxicated that he could not form the *mens rea* required for the crime is a question for the trier of fact. *Barnes v. State*, 693 N.E.2d 520, 522 (Ind.1998). The conviction will be affirmed if there was substantial evidence of probative value that would have allowed the fact finder to conclude beyond a reasonable doubt that the defendant formed the required mental element. *Id.* Evidence of capacity to form the requisite criminal intent includes the ability to "devise a plan, operate equipment, instruct the behavior of others or carry out acts requiring physical skill." *Id.* (citing *Terry v. State*, 465 N.E.2d 1085, 1088 (Ind.1984)). If the defendant was able to form the required mental element of the crime, the degree of intoxication is immaterial. *Id.*

■ A person who knowingly or intentionally confines another person with the intent to use the person confined as a shield or hostage, commits kidnapping, a Class A felony. Ind.Code § 35-42-3-2. "A person engages in conduct 'intentionally' if, when he engages in the conduct, it is his conscious objective to do so." Ind. Code § 35-41-2-2(a). "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." Ind.Code § 35-41-2-2(b).

■ The record shows an abundance of evidence from which the jury could have reasonably concluded that Bassie knowingly and intentionally confined Stout with the conscious objective of using Stout as a shield. Bassie's capacity to form the intent to kidnap Stout was shown by his ability to formulate the plan to steal Garrett's car, including purchasing tape used during the crime, retrieving the shotgun, and devising a scheme to gain access into Stout's home where he could obtain the keys and title to the car. Bassie also performed acts of dexterity during the ordeal. Bassie climbed up and down a flight of stairs; walked back and forth between the front and rear of the home while keeping Stout in front of him and holding a shotgun to her head. Bassie handled a shotgun throughout the affair without incident, and of his own accord, removed the shells from the gun before surrendering it

eliminated voluntary intoxication, limiting the intoxication defense to cases where " the intoxication resulted from the introduction of a substance into [the defendant's] body: (1) without his consent; or (2) when he did not know that the substance might cause intoxication." The legislature's changes to the intoxication defense took effect on July 1, 1997, five months before Bassie committed the crimes for which he was charged and ultimately convicted. *See* Ind.Code § 1-1-3-3. As such, a question arises as to whether voluntary intoxication was a viable defense in Indiana at the time of Bassie's trial. The trial court recognized the legislative amendments, but in light of our previous decision in *Terry v. State*, 465 N.E.2d 1085 (Ind.1984), wherein we adopted former Chief Justice Given's concurrence in *Sills v. State*, 463 N.E.2d 228 (Ind.1984) (majority opinion overruled in part on other grounds in *Wright v. State*, 658 N.E.2d 563, 570 (Ind.1995)), chose to give an instruction on the defense. In *Terry* we held that a previous version of Indiana's intoxication statute, which limited the defense to certain offenses, was void and without effect

stating, "[t]he attempt by the legislature to remove the factor of voluntary intoxication, except in limited situations goes against [a] firmly ingrained principle [that such factors may be offered to negate the capacity to formulate intent].... A defendant in Indiana can offer a defense of intoxication to any crime." *Terry*, 465 N.E.2d at 1088; *but see Montana v. Egelhoff*, 518 U.S. 37, 56, 116 S.Ct. 2013, 2024, 135 L.Ed.2d 361 (1996) (holding that the Due Process Clause of the Fourteenth Amendment does not require states to allow voluntary intoxication as a defense); *see also State v. Van Cleave*, 674 N.E.2d 1293, 1302-03 n. 15 (Ind.1996) (noting that the *Egelhoff* decision meant that *Terry* was no longer good law only to the extent *Terry* suggested the previous version of Ind. Code § 35-41-3-5(b) (1993) violated federal due process guarantees). Though the State noted the legislative amendments in objecting to a voluntary intoxication instruction at trial, it has not raised the issue on appeal in response to Bassie's claim that the State failed to carry its burden of negating the defense. Therefore, we do not address the issue.

to police. Further, Bassie's own testimony indicated that he understood his actions in utilizing Stout as a human shield. Bassie testified that he kept Stout in front of him to keep from getting shot. R. at 557. In sum, Bassie's claim that the State did not rebut his claim of voluntary intoxication amounts to an invitation for this court to reweigh the evidence. We decline. The evidence was sufficient to sustain the conviction.

## II

■ Bassie next challenges his forty-year sentence for kidnapping. He concedes the trial court did not abuse its discretion in sentencing him. Indeed the trial court enhanced Bassie's sentence from the presumptive thirty years because of Bassie's extensive criminal history and his gang affiliation. Nonetheless, citing *Beatty v. State*, 567 N.E.2d 1134 (Ind. 1991), Bassie contends his sentence should be reduced to the presumptive term because he did not harm his hostages.

The defendant in *Beatty* was convicted of three counts of kidnapping as Class A felonies. Like Bassie, the defendant did not physically injure his hostages. The trial court sentenced Beatty to the maximum fifty-year sentence on each count and ordered the sentences to run consecutively. On appeal, a majority of this Court held that Beatty's sentence should be revised:

A conviction for the offense of kidnapping is punished as a Class A felony, regardless of whether bodily injury is inflicted during the commission of the crime. Ind.Code § 35-42-3-2. The absence of such injury does not diminish the severity of the penalty range to that prescribed for Class B felonies. It is only through the sentencing process that distinctions may be made. While we find no abuse of discretion by the trial court in its determination of the sentence, appropriate use of Article 7 Section 4 of the Constitution of Indiana, granting to this Court the power to review and revise sentences in criminal cases, may provide an incentive that might discourage future hostage-takers from injuring innocent people. Considering these factors, we elect to exercise our constitutional authority to review and revise the sentences for counts I, II and III [the Class A kidnapping convictions]. We now order that the defendant be sentenced to 45 years on each of counts I, II, and III, with the sentences under counts II and III to run concurrently with each other and consecutive to the sentence on count I, for an aggregate sentence of 90 years on these counts.

*Beatty*, 567 N.E.2d at 1138.

Contrary to Bassie's apparent argument, *Beatty* does not stand for the proposition that this court will exercise its constitutional authority to review and revise sentences in every instance where a hostage taker has not injured innocent people. Rather, the exercise of such authority in those instances is fact sensitive. And the facts in this case are distinguishable from those in *Beatty*. Although in both instances the kidnapping defendants refrained from injuring their hostages, the similarity ends there. In *Beatty* the defendant received the maximum fifty-year sentence for each kidnapping offense. Here, Bassie received a forty-year sentence, which is ten years less than the maximum sentence. *See* Ind.Code § 35-50-2-4. Also, though both defendants Bassie and Beatty were involved in a single episode of criminal conduct, defendant Beatty received an executed sentence of 150 years, which is nearly double the sentence Bassie received. Finally, and most importantly, the trial court in this case specifically stated that it was taking "into consideration" the mitigating factor that Bassie had not injured his hostages. R. at 692. Thus, the trial court insured that Bassie was the beneficiary of the incentive this court announced in *Beatty*. Under the facts of this case we decline Bassie's invitation to exercise our

constitutional authority to revise his sentence.

Judgment affirmed.

SHEPARD, C.J., and DICKSON, SULLIVAN and BOEHM, JJ., concur.